UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

    Jewell T. Redd,                                                  Case No. 08-61569
                                                                   Chapter 7
                   Debtor.                                  Hon. Walter Shapero

_____/

Jewell T. Redd,

    Plaintiff,

v.                                                                    Adv. Pro. No. 10-07106

JP Morgan Chase, N.A.,

    Defendant.

_____/

**OPINION REGARDING COMPLAINT
FOR TURNOVER OF GARNISHED PAY**

**I. BACKGROUND AND FACTS**

On June 11, 2007, J.P. Morgan Chase, N.A. ("JP Morgan") filed a summons and complaint against Jewell Redd ("Debtor") in the 36th District Court of Michigan based on an alleged breach of contract. Debtor failed to answer and on July 30, 2007, that court entered a default judgment against her.

Debtor filed her Chapter 7 bankruptcy petition on September 5, 2008. On December 23, 2008, Debtor's bankruptcy case was closed without discharge for her failure to file her Financial Management Course Certificate. On February 4, 2009, JP Morgan served a wage garnishment in the 36th District Court case.

On September 18, 2009, Debtor, in pro per, filed a Motion to Reopen the bankruptcy case, asserting it was closed because of attorney neglect. She also filed her Certificate of Completion of Financial Management Course. The Motion to Reopen was granted on July 15,

1

2010[1] and an effectuating Order was entered on July 19, 2010. Debtor's case was again closed after she obtained a discharge.

Upon the Debtor's case being reopened on July 15, 2010, JP Morgan closed its 36th District Court file and refunded any funds that were garnished after that re-opening date. JP Morgan had garnished $8,615.39 between December 23, 2008 (the date Debtor's case was closed without discharge) and July 15, 2010 (the date Debtor's case was reopened). During that time period, between October 22, 2009 and December 2, 2009, Debtor was out on sick leave and was receiving pay from her employer by reason of one or more of the following: accumulated sick leave hours, annual leave hours, leave credits, the Family Medical Leave Act ("FMLA"), and/or possibly others. On August 14, 2010, the Debtor filed a second Motion to Reopen the Case for the purpose of filing an adversary proceeding to recover the funds that were garnished between December 23, 2008 and July 15, 2010. On September 30, 2010, a hearing was held on the Debtor's Motion to Re-open the case and the Court granted that motion.

Debtor thereafter filed a Complaint for Turnover of Property on October 26, 2010, which contained two allegations: (1) that all of the garnished wages were essential sustenance and support of the Plaintiff, and (2) that the garnishment was in violation of the automatic stay. JP Morgan filed its Motion for Summary Judgment on April 15, 2011. In its Summary Judgment Motion, JP Morgan argued that (1) all of the funds garnished between December 23, 2008 and July 15, 2010 were post-petition wages, which were thus not property of the estate and were not exemptable property, and (2) the automatic stay was not in effect during that period of time. In her Response to JP Morgan's Motion for Summary Judgment, Debtor argued that JP Morgan's actions were in violation of the automatic stay, that the garnished funds were exempt property of the estate, and that Debtor's "right to receive sick pay is generally not able to be attached under state law." The Court held a hearing on JP Morgan's Motion for Summary Judgment and decided to set an evidentiary hearing on the matter.[2] That evidentiary hearing was held, which Debtor did not attend, and no testimony was offered. The parties agreed to admit certain documentary evidence and agreed to adjourn final arguments on the matter in lieu of further

---

[1] It is unclear why there was such a long gap between the date Debtor filed her Motion to Reopen (September 18, 2009) and the date such was heard (July 15, 2010).
[2] Based on the fact that the parties have narrowed the issues in this case to those of law only, the Court is deciding this matter as if the evidentiary hearing held in this case was the trial. The parties have agreed that the only issues remaining in this case are those that were raised at the evidentiary hearing and at the hearing held to allow for final arguments.

2

briefing. After several stipulated to adjournments, the Court heard the parties' final arguments and took the matter under advisement. After those several hearings, the parties were able to narrow the remaining issues to: (a) whether certain funds that were garnished (some $1,328.34 of the total $8,615.39), which were paid while Debtor was out of work on sick leave, constitute exemptable property of the estate under 11 U.S.C. 522(d)(10) and (2) whether the sick leave pay was exempt from garnishment under Michigan law. The parties have agreed that the remainder of the funds that were garnished (some $7,287.05) were not exempt property of the estate since such constituted post-petition earnings of the Debtor and that JP Morgan's garnishment of those funds was not a violation of the automatic stay.

## II. **DISCUSSION**

### A. Whether the Sick Leave Pay is Exempt Property of the Estate

Debtor argues that her sick leave pay is exempt from garnishment because those funds were earned pre-petition, but payable post-petition, and as such are exempt.

It is unclear in this case whether the sick pay Debtor received from her employer between October 22, 2009 and December 2, 2009, was derived from her accumulated sick leave hours, annual leave hours, leave credits, the Family Medical Leave Act ("FMLA"), and/or from some other source. As noted, Debtor did not appear at the evidentiary hearing on this matter and there was no testimony given at that hearing. So, the Court can only attempt to determine the source of Debtor's sick leave pay from the documents admitted into evidence at that hearing. Based on the information contained in admitted Exhibit A, it appears that the sick leave pay Debtor received during that period could have come from one of, or some combination of, the following sources:

(1) The Employee Departure Report shows that, as of the prior pay period, Debtor had 0.8 hours of "sick leave hours" and 1.2 hours of "annual leave hours;"

(2) The Application for Leave of Absence or Extended Use of Leave Credits shows, under "type of absence," that Debtor would be taking a paid leave of absence and using "leave credits" and shows that the last day she worked was October 17, 2009, and that her leave would be exhausted on October 22, 2009;

(3) The Family Medical Leave Act ("FMLA") Notice of Eligibility, Rights, and Designation shows Debtor was eligible for 416 hours under that act as of October 18, 2009, and that Debtor was required to "substitute accrued paid leave for unpaid FMLA leave;" It further showed that based on Debtor's anticipate leave

3

schedule, Debtor would be using approximately 256 hours of her FMLA entitlement.

In attempting to determine how much, if any, of the sick leave pay Debtor could have possibly "earned" pre-petition, making such possibly exemptable property of the estate, it should be noted that leave taken under the FMLA is unpaid leave. The FMLA entitles eligible employees of covered employers to take <u>unpaid, job-protected leave</u> for specified family and medical reasons with continuation of group health insurance coverage under the same terms and conditions as if the employee had not taken leave.[3] *See* 29 U.S.C. § 2601, *et seq*. Although it is unclear how much of Debtor's sick leave time was taken under the FMLA, it is clear that any such time was unpaid. So, sick leave pay had to have come from some source other than the FMLA. It should also be noted that Debtor's "leave credits," which were apparently enough to allow her to be paid for the sick leave time she took between October 17, 2009 and October 22, 2009, were apparently used up during that period (and those dates are not among those in dispute in this proceeding).

Based on the exhibits provided at the evidentiary hearing, as summarized above, Debtor's sick leave pay had to have come from her accumulated sick leave hours or annual leave hours, or possibly from some other undocumented source. Based on the evidence before the Court, it is clear that, as of the pay period prior to November 18, 2009 (the date on which the Employee Departure Report (Exhibit A) was signed), Debtor had 0.8 hours of "sick leave" and 1.2 hours of "annual leave." There is no documentation or testimony before the Court as to how many "sick leave hours" and "annual leave hours" Debtor had accumulated prior to that time and had used during the sick leave period she took between October 22, 2009 and that November 18, 2009 date. As the Court reads and understands Exhibit A, Debtor had 0.8 hours of "sick leave" and 1.2 hours of "annual leave" remaining and available for her use after that November 18, 2009 date. That is the only conclusion the Court is able to reach based on the limited record before it. Debtor was given an opportunity to submit additional materials, including a copy of any

---

[3] Under the FMLA, eligible employees are entitled to (1) twelve workweeks of leave in a 12-month period for (a) the birth of a child and to care for the newborn child within one year of birth, (b) the placement with the employee of a child for adoption or foster care and to care for the newly placed child within one year of placement, (c) to care for the employee's spouse, child, or parent who has a serious health condition, (d) a serious health condition that makes the employee unable to perform the essential functions of his or her job, and (d) any qualifying exigency arising out of the fact that the employee's spouse, son, daughter, or parent is a covered military member on "covered active duty," or (2) twenty-six workweeks of leave during a single 12 month period to care for covered servicemember with a serious injury or illness who is the spouse, son, daughter, parent, or next of kin to the employee (military caregiver leave). *See* 29 U.S.C. § 2601, *et seq*.

employee handbook or other manual or policy that might have shed some light on how "sick leave" and "annual leave" hours are accumulated, but Debtor failed to submit such. Thus, it appears that the only remaining, documented, sick leave hours and pay at issue which the Court can consider would be the 0.8 hours of "sick leave" and the 1.2 hours of "annual leave" (hereinafter cumulatively referred to as "sick leave pay").[4]

The first step in determining whether Debtor's sick leave pay is exempt property is to determine whether it is property of the estate. An asset must be property of the estate before the debtor may claim an exemption for it. *See Owen v. Owen*, 500 U.S. 305, 308 (1991) ("[A]n interest that is not possessed by the estate cannot be exempted."). 11 U.S.C.§ 541(a) governs what property of the debtor becomes property of the bankruptcy estate, and provides, with only a few minor exceptions, that property of the estate includes all property interests of the debtor at the time the bankruptcy petition is filed. Specifically, it is provided in § 541(a) that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." Debtor did not list any contingent interest in sick leave as an asset, nor had she scheduled any such exemption. Further, based on the limited record in this case, it is impossible for the Court to determine if Debtor actually had any accrued sick leave time at the time of filing to list as an asset.

Even though Debtor has not listed her sick leave as an asset and the Court cannot determine whether any such asset existed[5], Debtor's bankruptcy case had been closed at the time JP Morgan garnished the sick leave pay. As noted, Debtor's bankruptcy estate was decreed to be fully administered, the Chapter 7 Trustee was discharged, and her case was closed without discharge on December 23, 2008. After the Debtor's case was closed, there was no property in the bankruptcy estate.[6] As of the time Debtor's Motion to Reopen was granted and the case was

---

[4] Debtor's counsel argued that the hearing on this matter that Debtor had significant accumulated sick leave time because she had been an employee of the State of Michigan for a number of years. However, as noted, Debtor did not appear at the evidentiary hearing and the Court has no testimony or evidence on record which would tend to prove that Debtor did in fact have accumulated sick leave time beyond the 0.8 hours of "sick leave" and 1.2 hours of "annual leave" set forth in the Employee Departure Report (Exhibit A).

[5] The Court, for purposes of this Opinion, will not opine on the issue of whether sick leave that has been earned, but is payable at some future date, constitutes property of the estate or whether such is exemptable property.

[6] Pursuant to § 544(c), "[u]nless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title. 11 U.S.C. § 544(c). Section 544(d) provides that "property of the estate that is not abandoned under this section and is not administered in the case (such as unscheduled assets) remains property of the estate." 11 U.S.C. § 544(d). As noted, Debtor did not disclose any accumulated sick leave as an asset on her bankruptcy schedules and the Court is unable to determine whether Debtor had any such asset at the time of filing.

5

reopened by Court order on July 19, 2010, Debtor had not objected to the garnishments[7] and her interest in the garnished sick leave pay had terminated. Thus, at that time Debtor did not have any interest in those garnished funds and such did not constitute property of the estate. Although this outcome is unfortunate for this Debtor, whose case was closed due to her attorney's neglect in failure to file her Financial Management Course Certificate, the garnishment in fact occurred while her case was closed and she simply did not have any interest in those garnished funds when the case was reopened. For those reasons, the Court concludes that the sick leave pay did not constitute property of the estate and that such could not be exempted by Debtor.

B. <u>Whether the Sick Leave Pay Was Exempt from Garnishment under Michigan Law</u>

In her Response to JP Morgan's Motion for Summary Judgment, Debtor argued that her "right to receive sick pay is generally not able to be attached under state law." She did not cite any authority for that argument. While this issue was not argued at the evidentiary hearing nor during the final arguments, the Court will nevertheless address it.

Michigan law provides that certain types of funds are exempt from garnishment. *See* M.C.L. §418.821 (A payment under the Worker's Disability Compensation Act "shall not be assignable or subject to attachment or garnishment or be held liable in any way for a debt."); M.C.L § 421.30 ("All rights to benefits [under the Michigan Employment Security Act] shall be absolutely unalienable by any assignment, sale, garnishment, execution or otherwise . . . ."): M.C.L. § 400.63 ("[A]ll aid, relief, or assistance given under [the Social Welfare Act] is absolutely inalienable by any assignment, sale, garnishment, execution, or otherwise . . . ."); 42 U.S.C. § 407(a) (social security benefits "shall not be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."). Debtor has cited no specific statutory authority for her argument that her sick leave pay is exempt from garnishment under Michigan law. The statutory scheme is that any garnishment exemptions are specifically set forth in the appropriate statute, and thus, under statutory construction principles of *expressio unius est exclusio alterius*, there are no others. *Bradley . Saranac Community Sch. Bd. of Educ.,* 455 Mich. 285, 298 (1997). Furthermore, as noted, Debtor was required to timely object in the state court relative to any exemption and she didn't.

---

[7] Objections to garnishment must be filed with the court no later than 14 days after service of the writ on defendant. Objections may be filed after the time provided in this subrule but do not suspend payment pursuant to subrule (J) unless ordered by the court. MCR 3.101(K)(1).

6

10-07106-wsd    Doc 31    Filed 01/27/12    Entered 01/30/12 08:16:34    Page 6 of 7

Accordingly, the Court concludes that the Debtor's sick leave pay was not exempt from garnishment under Michigan law.

### III. CONCLUSION

For the reasons set forth, the Court concludes that the sick leave pay was not exemptable property of the estate and such was not exempt from garnishment under Michigan law. Accordingly, JP Morgan is entitled to retain the garnished sick leave pay and the Complaint for Turnover of Property is dismissed. JP Morgan shall prepare and present an appropriate order.

.

```
Signed on January 27, 2012
                /s/ Walter Shapero
         Walter Shapero
         United States Bankruptcy Judge
```